MAURICE N. PROULX, Claimant, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 31499.)

BALTY A. ELMORE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31503.)

Court of Claims, February 28, 1955.

*David J. Read* for Maurice N. Proulx, claimant.

*Luke A. Burns* for Balty A. Elmore, claimant.

*Nathaniel L. Goldstein, Attorney-General (Lawrence H. Wagner* of counsel), for defendant.

LOUNSBERRY, P. J. The claims herein were filed against the State of New York for damages for personal injuries resulting from accidents which occurred on July 16, 1952, on Route 20, a State highway, in the town of Lafayette, County of Onondaga, New York. The two claims were tried together and likewise treated here.

The claimants, who were in the United States Army and stationed at Camp Drum, were each driving a one and one-half ton tractor-trailer truck in a convoy proceeding from the camp to the Oneida Ordnance Depot. The convoy was preceded by a jeep occupied by a lieutenant and a driver. When they reached a point on State Route 20 near Cardiff Hill, claimant Proulx, who was following the jeep at a distance of twenty-five yards, saw it jump from side to side on the highway and continue down the hill. Almost momentarily after seeing the maneuvers of the jeep his truck hit an obstruction in the road and he lost control. The truck jackknifed and came to rest upside down pinning claimant underneath. Claimant Elmore was following Proulx at a distance of about fifty yards. When he saw the truck ahead go out of control he applied his brakes but not in time to avoid hitting the raised slab of concrete. His truck also went out of control, jackknifed and likewise upset pinning him underneath.

Three disinterested witnesses, who traveled this road prior to July 16, 1952, at least once daily, testified that the slab of concrete at this particular location had been raised for at least three weeks. Their testimony as to the height of the raised slab varied from four to eight inches. Measurements made after the accident by a State trooper were three and one-half inches.

There can be no doubt that this slab of concrete pavement had been raised for some time. The trucks were proceeding at a speed of thirty to thirty-five miles per hour. Each truck was equipped with a governor which limited the maximum speed to thirty-five miles per hour.

Claimant Proulx was taken from beneath the truck in an unconscious condition and removed to the Syracuse General Hospital by ambulance where it was found he was in deep shock, suffering from many lacerations and abrasions, a rupture of the urinary bladder and a severe Malgaigne fracture of the pelvis, which involved certain nerves extending from the spinal column, and a rupture of the sacro-iliac as well as other injuries. An abdominal operation was performed to repair the ruptured bladder. A catheter was inserted in the urethra to drain the bladder and remained in this position until the bladder healed. A plaster cast and weight were placed upon the left leg under heavy traction exerted by means of a pin through the knee. After some days, however, this proved unsuccessful and was removed. The claimant was then placed in a cast from his neck to his toes in which he remained for several weeks. On August 29, 1952, he was removed by ambulance from the Syracuse hospital to Sampson Air Base where he remained until discharged December 5, 1952. On December 6, 1952, he returned to Camp Drum where he was placed on light duty and continued on such light duty until discharged in October, 1953.

The claimant complained of total sexual impotency since the accident. The medical testimony is in agreement that this condition may exist. If so, it is the result of the severe fracture of the pelvis and the disturbance of certain nerve centers. These symptoms are, however, entirely subjective. The doctors agree if this impotency does exist, and there is no reason from the testimony to dispute it, it will be permanent. However, Dr. Murphy, for the State, testified that by treatment over a period of years potency might be partially restored. He is also suffering from epididymitis which may at times be disabling.

Claimant endured severe pain and suffering for many months as a result of the accident. At the time of the trial he still experienced considerable pain. He is suffering from a moderate stricture and an infection of the urethra and prostate gland, all of which will be permanent and which will require frequent catheterization treatment. X rays taken in August, 1953, indicate the normal architecture of the pelvis is permanently disrupted by one inch. The left leg is one-half inch shorter than the right although claimant walks without an obvious limp. The

medical testimony was to the effect that an arthritic condition might develop in the pelvis in later life. At the time of the trial, claimant complained of a prickling sensation in his foot and that he could not stand or drive an automobile or truck for ·long periods of time. Proulx, who was twenty years of age at the time of the accident, is unable to do any type of heavy labor for which he was by training and background fitted.

Claimant Elmore was removed from the scene of the accident in a state of shock to the Onondaga General Hospital at Syracuse. His injuries consisted of a mild concussion, a deep laceration below the right kneecap, which required several sutures, a hematoma on the right hip, two fractures of the pelvis in addition to several small lacerations and bruises. After one week he was transferred from the Onondaga General Hospital to Sampson Air Base where he remained until September 25, 1952, at which time he was given a thirty-day medical leave. He was discharged from the hospital in November, 1952. While at Sampson Air Base he was required to lie flat on his back on a thin mattress over a hard board for several weeks. He also for a time experienced an uncomfortable pressure on the urinary bladder: the hematoma on the right hip was drained several times. These injuries were the cause of severe pain and suffering for several weeks. He returned to Camp Drum in November, 1952, and after a short period was placed on regular duty and was still on such duty in February, 1954, apparently able to perform his assigned duties. The medical testimony indicates he has experienced a good recovery with no serious permanent effects. X rays indicated he had some excess callus formed by the fracture of the pelvis, which the doctors believe will eventually disappear. At the time of the accident Elmore was twenty-five years of age.

State highway employees traveled over this highway frequently during the three weeks prior to the accident. State Trooper Cody saw the raised slab of concrete at 4:30 P.M. on the day prior to the accident, but made no report of it.

We are of the opinion that the testimony of the three disinterested witnesses indicates that unquestionably this slab of concrete had been raised for a considerable period and constituted a dangerous condition of the highway of which the State of New York, its agents and employees had, or should have had, adequate notice. (*Miner* v. *State of New York,* 196 Misc. 752.) There were no flares nor warning signs to notify the traveling public of this condition.

The State of New York, its agents and employees, were guilty of negligence and the claimants were free from contributory

negligence. The defective condition of the highway was the proximate cause of the accidents.

The injuries sustained by the claimants were all the result of the accidents.

The claimant Maurice N. Proulx is awarded the sum of $55,000, and claimant Balty A. Elmore is awarded the sum of $8,000.

The foregoing constitutes our written and signed decision. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.